Good morning, and may it please the Court. My name is Tim Everett. I'm here today to represent Mr. Carlos Castillo in the matter of Castillo v. Mukasey. Mr. Castillo wishes to petition the Court to challenge the immigration judge's negative credibility decision in this matter. Mr. Castillo asserts that upon careful review, the reasons set forth by the immigration judge do not withstand scrutiny. And Mr. Castillo asserts that the immigration judge made his negative credibility decision apparently based on eight reasons. The first reason appears to be that Mr. Castillo admitted in an incident involving an ice pick and a blinding powder that was thrown at a crowd that he had also been scratched on the chest and that his shirt had been torn when the ice pick blow hit him. I think it's worth noting that the first injury he occurred in this single blow was to his arm, and that's the injury that he noted in his statement and in his testimony. The apparent omission was the minor injury to his chest and the scratch and his torn shirt. We assert that that was a minor omission that in unlike the other. I'm sorry. You mentioned the arm injury in his petition? Pardon me, Your Honor? The arm injury. He does mention the arm injury in both, in his testimony and in his statement. In his statement accompanying this arm application, he mentioned the arm injury. Counsel, the incident that I think may present the strongest hurdle for you is the Justice of the Peace report, that whole scenario. Why wouldn't that be enough to sustain on the basis of substantial evidence the credibility determination made by the I.J.? If I may, Your Honor, and I admit that is a very confusing part of the testimony. My reading of the record is that when that question was posed to Mr. Castillo by the immigration judge, at that point in time I believe Mr. Castillo was thinking about the incident in the neighborhood where he was going to go over the bridge, but his friend called him and told him they were waiting for him. It appears that there was a black car in his neighborhood. It appears that car also shot at his house. And if I can reference the record to that. So I think when Mr. Castillo was first questioned, he thought about that incident. He didn't think about the November 2, 2001 incident when he was shot at directly. And let me see if I can. So, yes. Are you speaking of the omission of the shooting incident? Well, what the judge says, the judge says, why did you not mention the November 2, 2001 shooting at the political rally in your statement to the magistrate, which I understand would be a valid concern. But it appears when the question was first posed to him, Castillo did not understand which shooting incident, because there were several shooting incidents in his testimony, didn't understand which shooting incident the judge was referring to. And I find support in this in two reasons. One, later on in his testimony, he does state that he was shot at, that he was at the political rally after he filed the report. So apparently he could not have included that, because that had not occurred at the time he filed the report. I think he filed the report in the afternoon and the political rally was in the evening. So it appears he might have been referencing another shooting incident. And also, if you look at that report, he does state something, and I'm looking at the translation. It says, the vehicle with polarized dark windows. And that's a very close reference to what he said in his testimony about the vehicle that was in his neighborhood when they made that threat and then there was some discrepancy about who overheard the threat. So I think what he was referring to when he went to the magistrate was that incident in his neighborhood. And he didn't understand which shooting incident the judge was referring to. Well, now, what's our duty on review here? The test, as I understand it, is substantial evidence on the record, and it would appear, notwithstanding your explanation, that there are inconsistencies here, which would be enough. Are you referring to that particular incident, Your Honor, or are you referring to the other? Well, between the two. Which one? The one with the magistrate report or? With the Justice of the Peace report. Well, that's what I'm trying to clarify. My understanding is that the magistrate report was filed in the afternoon before the November 2, 2001, shooting incident. So it would make ñ there was no way he could have included that in the magistrate report. And then when the judge starts asking him, he says, well, did you include it? He says yes, but then there seems to be some confusion because he doesn't know which shooting incident the judge is referring to. And it's also ñ and I know interpretation problems are something that this Court sees quite frequently, so I don't know how they ñ but there appears to be an indication that there's an interpretation problem, and that's on page 137 of the record. So I think that ñ I think that explains the inconsistency, because apparently the judge jumps from one line of questioning to another line of questioning. And Castillo doesn't quite stay up with the judge and doesn't understand what he's doing. Well, I mean, the fact that you think you have a satisfactory explanation doesn't mean that that's something that I.J. had to accept. What you have to show is that I.J. would have been irrational to not to accept this explanation. But you now offer it based on your understanding of the sequence of events. That just strikes me as a pretty weak argument when we are reviewing a fact finder who was present, heard the testimony, listened to the ñ I mean, heard the questions, looked at the record, and, you know, actually heard the witnesses ñ a witness testify. If I may, Your Honor. Yeah. I don't ñ I don't agree with that. I mean, I think ñ obviously, if you're talking about demeanor, evasiveness, but if you look at what's stated in black and white, I don't think ñ I think the fact that the judge misunderstands or does not understand what the witness is responding to is a critical factor. And that appears to be what's happening in here in the judge's analysis. Well, you said your understanding is ñ and you gave us your understanding is the timing. Yes. But I think that's supported by the record. Well, sure, I swear. Well, may I ñ well, I'm going to run out of time if I do that, Your Honor. Then just briefly, you want to try to say that for a bottle? Yes, Your Honor. Let me ask you one more ñ let me ask you one more thing at this time. Yes, Your Honor. What do we know about the circumstances of his arrival in San Ysidro? As to how he came into the United States, Your Honor? Yes, Your Honor. I don't know because that was not an issue that was put forward by the judge. I'm not going to ñ I can look up for it. Well, the reason I ask this, and this is not referenced in the hearing for reasons that I don't understand, there's a form that he fills out where he circles yes and no and so on. It's at page 559 of the AR. All right. One of the questions, number five is, are you afraid to return to your home country? He circles no. Okay. And I'm wondering if there's an explanation for that. All right. May I look at that, Your Honor, and come back for another bottle? Yes. I'll see the rest of my time. Okay. We'll hear from the government. Good morning. May it please the Court. My name is Rebecca Nyberg on behalf of the Attorney General. We are asking this Court to affirm the IJ and BIA's decision in this case denying petitioner's application for asylum, withholding of removal, and cap protection. The immigration judge laid out a well-supported finding of adverse credibility in this case, and petitioner's counsel, through his brief and through his argument, has provided no reason for this Court to overturn the agency's decision. As Your Honor's referenced, it's not enough that there are alternate theories of why something may have occurred or why something may not have been explained sufficiently or anything along those lines. All the agency said with an adverse credibility finding was that they didn't know which to believe. They didn't say he was not telling the truth, but they don't know what to believe. And there's nothing in the transcript that suggests any definitive finding or any reason that this finding would be found so erroneous that any reasonable fact finder. Do you have any views to the matter that we discussed with opposing counselors to the timing of the report to the Justice of the Peace? Your Honor, that would exactly go to my point. It's not the agency is not saying that he's a liar. What the agency is saying is it doesn't know what to believe. Did this occur? Did this not occur? Did it occur before the Justice of the Peace report was entered? Did it not? That's enough inconsistency to support the adverse credibility finding. And the truth of the scenario, as kind of perverse as it seems, is kind of irrelevant here. We're looking at whether there is substantial evidence that supports the IJ's finding in this case, and there is. All of these inconsistencies. Well, counsel, I'm not persuaded that all of them are persuasive. Which would you regard of the many? There's the ice pick. There's the bridge ambush. There's the car sabotage, the Justice of the Peace, and there are several others. Which one of those credibility determinations would you say, which one or two of those determinations constitute substantial evidence? Well, first of all, Your Honor, we would submit that you can't take these inconsistencies in isolation. And as an aggregate, they support the finding. But specifically, I do think you're exactly correct in your question, Petitioner, that the whole interchange with the Justice of the Peace report and the explanations credited the fact that Petitioner did not ask for further explanation within the question, you know, which incident are you talking about here? I'm a little bit confused. But immediately launches into, oh, well, you know, the Justice of the Peace may have his own reasons for not wanting to include that incident. And he gives explanations. He gives a number of explanations before he actually comes back and says that incident happened later. And it's interesting to note that that last explanation occurred on a different day. They had adjourned the hearing the afternoon and come back. And when he came back the second time, that was when he said, oh, yeah, that happened later. So, you know, I do think there's a question there of what exactly occurred. But his first inclination, his first response was the Justice of the Peace had his own reasons for not including it. I don't know why he wouldn't include it otherwise. That sort of thing I think is really more telling than anything else. The other incident that I think is one of the major incidents is the ice pick incident where he says, oh, that the ice pick grazed my arm. And then at the hearing, he says, it stabbed my stomach. And he's pointing to himself as if there's some sort of physical mark left from that. Did he use the word stabbed? Or rather, did the translator use the word stabbed? When you say stabbed, I stabbed my stomach. That was your word. Is that the word in the transcript? I don't know exactly what. I don't think it was. I don't know exactly what it was. He says he was attacked with an ice pick. Yeah, of course. He reaches his arm up. It grazes his arm. And that's the only thing that he includes in his asylum declaration. And then at his hearing, he does say that the ice pick made contact with his body and points to his body. Chest or stomach area. There was some sort of incident. And the I.J.'s finding that if there was some sort of mark and there was some sort of injury that occurred past the grazing of the arm, which would seem to be quite minor, that the failure to mention that more substantial injury to his torso. But, you see, my sense is that, as he described it on the stand, the injury to his torso wasn't very substantial either. They're both pretty minor. Penetrates the cloth. He apparently gets a mark. Doesn't need stitches. Doesn't go to the hospital. Well, agreed that perhaps none of these incidents by themselves would have supported the average credibility finding, however, in the aggregate. And the injuries also goes to the truck incident where he says he was knocked out for 10 to 15 minutes. And that was not mentioned at all in his declaration that he sustained no sort of injury, where he's telling the immigration judge a very dramatic incident in which, you know, the truck is on its side or on its roof and he's passed out for 10 to 15 minutes and somebody then pulled him from the burning wreckage. That's a very substantial incident. And his explanation that, oh, I didn't have any longstanding injury after that, I didn't need any sort of treatment after that, kind of doesn't go to the point of it was a substantial incident that was completely omitted from the declaration. He does seem to have had a number of miraculous escapes. It's a very entertaining transcript in that respect, yes. Uh-huh. That he does seem to be thwarting death at every turn. What am I to make of the fact that he seems to have no knowledge of the whereabouts of his, I'll say, common-law wife and children? That puzzled me a little bit. It puzzles me as well. And, you know, we go from the same record that you all go from, and there's really nothing there. And, you know, I have no explanation for it. I don't think there is an explanation for it. What do you make of his having circled on that initial form at the point of entry that he had no fear of going back to his own country? Are you able to rely on it? I mean, it's there in the record, but the IJ seems not to have relied on it. The government seems not to have made any point of it below. Maybe the government wasn't aware of it until maybe now. That's correct. I hadn't noticed it as well. And it's certainly possible that the immigration judge didn't notice it. What we're asking here is for the finding of the immigration judge and the board to be upheld, and we're looking at the actual reasons for the immigration judge's decision in upholding that. So this would be something that, although quite interesting and perhaps could have been brought up, was not brought up. It's off the table, yeah. That's correct, Your Honor. Okay. Thank you. Thank you. Do you have some rebuttal? Mr. Castillo? To Justice Kuczynski, in the record it appears at 135 Mr. Castillo is referring to an incident in his neighborhood where in a car, a black car, and I don't know if he clarifies it has dark windows or not, and then thereafter the judge starts asking him on the same page about the magistrate report. So there's a very quick transition from one incident to the other incident. On the next page, I'm sorry, on 137, there is an obvious reference that there's an interpretation problem. It's stated we're not getting the questions across somehow. The answers are completely opposite. And we don't really know who that's from, but it apparently might be from the interpreter in this. The translation of the magistrate's report states, in part, through a vehicle with polarized black tinted windows that drove around in front of his home, which appeared to be a direct reference to the car that was in his neighborhood, which would make sense, and that the report was, he states that he filed the report for protection. And if he was questioning about a shooting regarding that report, he might have stated there was a shooting because apparently the man shot at his house when they were in the neighborhood. So, and then he states later on that in his testimony in counsel, opposing counsel is correct, this is after the court was reconvened that he did attend the rally in the evening and therefore could not have made mention of it in the report filed in the afternoon. And to get to your last question, sir, it appears that that preliminary questionnaire was filed before he had counsel and was at the time of the service of the notice to appear of the order to show cause. Thank you. Thank you. The case is filed. You will stand submitted. Thank you. We'll next hear argument in.
judges: Kozinski, O'scannlain, Fletcher